**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| MARGARET REYNARD,<br><br>*Plaintiff*,<br><br>v.<br><br>ADVANTAGE BEHAVIORAL HEALTH SERVICES,<br><br>*Defendant*. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 23-13436 (KMW-EAP)<br><br>**OPINION** |

**Joshua S. Boyette, Esq.**
Swartz Swidler LLC
9 Tanner St., Suite 101
Haddonfield, NJ 08033
*Counsel for Plaintiff*

**Christopher Michael Curci, Esq.**
**Ross G. Currie, Esq.**
Ward Law, LLC
1617 John F. Kennedy Boulevard, Suite 500
Philadelphia, PA 19103
*Counsel for Defendant*

**WILLIAMS, District Judge:**

This matter comes before the Court by way of Defendant Advantage Behavioral Health Services' ("Defendant") Motion to Compel Arbitration and Stay or Dismiss the Action (Dkt. No. 5); Plaintiff Margaret Reynard's ("Plaintiff") Opposition thereto and Cross-Motion for Leave to Amend the Complaint (Dkt. Nos. 8, 9); and Defendant's Reply (Dkt. No. 13). The Court, having considered the parties' submissions without oral argument pursuant to L.Civ.R. 78.1(b), **DENIES** Defendant's Motion to Compel and **DENIES** Plaintiff's Cross-Motion for Leave to Amend.

I.     **BACKGROUND**[1]

This matter arises out of an employment dispute wherein Plaintiff alleges Defendant unlawfully terminated her employment due to Plaintiff's age and/or in retaliation for her

---

[1] For purposes of this motion, the Court accepts the factual allegations in Plaintiff's Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

complaints of age discrimination and *quid pro quo* sexual harassment. Specifically, Plaintiff alleges that she began her employment with Defendant as a Billing Specialist in or around March 2021. (Compl., ¶ 11, Dkt. No. 1.) Approximately one year into her employment, Plaintiff complained of age discrimination and third-party *quid pro quo* sexual harassment, *i.e.*, sexual favoritism. (*Id.*, ¶ 24.) Defendant terminated Plaintiff about two weeks later. (*Id.*, ¶ 34.) On or around December 7, 2022, Plaintiff filed an EEOC charge alleging sex and age discrimination and discriminatory retaliation. (EEOC Charge, Dkt. No. 8-4.)[2]

On August 31, 2023, Plaintiff filed this action, alleging Defendant improperly discriminated against her on the basis of her age and in retaliation for her complaints of age discrimination and *quid pro quo* sexual harassment. In her Complaint, Plaintiff brings five causes of action: 1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; 2) retaliation in violation of the ADEA, 29 U.S.C. § 621 *et seq.*; 3) age discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1., *et seq.*; 4) retaliation in violation of the NJLAD; 5) gender discrimination in violation of the NJLAD. (Compl., ¶¶ 41-74.)

On or around October 25, 2023, Defendant demanded arbitration, providing Plaintiff with a copy of an arbitration agreement that Defendant contended applied to this matter. (Dkt. No. 5-5.) Thereafter, Defendant filed its motion to compel arbitration and dismiss or stay the action. (Dkt. No. 5.) Defendant asserts that arbitration is appropriate because, *inter alia*, Plaintiff executed a valid, enforceable arbitration agreement, which covers the claims asserted in Plaintiff's Complaint

---

[2] Notably, "the ADEA does not require that the EEOC issue a right-to-sue letter before a suit is filed in federal court. *Lavelle v. PSE&G Gas & Elec.*, No. 22-5735, 2023 WL 4947371, at *2 (D.N.J. Aug. 3, 2023). However, "[i]n the event that the EEOC [does] issue[ ] a right-to-sue letter, an ADEA claimant must file [his] federal suit within ninety days after receipt of the letter." *Covington v. URS Corp.*, No. 11-04516, 2013 WL 2181282, at *2 (D.N.J. May 20, 2013) (citing 29 U.S.C. § 626(e)). Here, Plaintiff's Complaint does not indicate the EEOC issued a right-to-sue letter.

and proposed Amended Complaint ("PAC," Dkt. No. 8-2). (*See* Def.'s MTD Br. at 7.) Defendant attached to its motion a copy of the purported arbitration agreement, along with a receipt containing Plaintiff's electronic signature "acknowledg[ing] receipt of the Arbitration Agreement found below." (Dkt. No. 5-4 at 5.) The agreement, in turn, states that "[b]oth parties acknowledge that they . . . understand and agree that *by signing this Agreement*, both parties knowingly and voluntarily waive their right to trial by court or jury for Covered Disputes as defined above." (*Id.* at 4 (emphasis added).) Notably, the signature lines beneath that clause are not signed by either Party. (*Id.*)

In opposition, Plaintiff contends that the arbitration agreement is invalid because Plaintiff did not sign it, there was no meeting of the minds regarding its terms, and Plaintiff did not knowingly waive her right to seek relief in court. (Pl.'s Opp. Br. at 12-16.) In support of her opposition, Plaintiff submitted an affidavit stating that she received a packed of information from Defendant when she commenced her employment but does not recall seeing or reviewing an arbitration agreement as part of that packet. (Affidavit of Margaret Reynard ("Reynard Aff."), ¶¶ 1-2, Dkt. No. 8-5.) Plaintiff attests that she did not intend to enter into an arbitration agreement with Defendant and did not know that by beginning employment with Defendant she waived her right to litigate any employment disputes before a jury. (*Id.* at ¶ 4.) Plaintiff also states that she would not have signed an agreement limiting her ability to recover attorneys' fees for employment-based civil rights claims because it would limit her ability to afford counsel. (*Id.* at ¶ 5.) According to Plaintiff, at no point during her employment or prior to October 25, 2022, did Defendant inform her that it believed she was party to an arbitration agreement. (*Id.* at ¶ 6.)

With her opposition, Plaintiff filed a cross-motion for leave to amend her Complaint to add allegations concerning *quid pro quo* sexual harassment and favoritism pursuant to NJLAD. (Dkt.

3

No. 8.) Plaintiff alleges that even if the arbitration agreement were valid and covered all the claims in her original Complaint, it would not cover her claims of unlawful sexual favoritism alleged in her PAC. (Pl.'s Opp. Br. at 1, 6-8.) In its reply, Defendant argues that granting leave to amend would be futile because all of Plaintiff's claims in her PAC would nonetheless be subject to the arbitration agreement or dismissal for failure to state a claim. (Def.'s Reply Br. at 1-3.)

## II.   LEGAL STANDARD[3]

### a. Motion to Compel

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement." *Id.* (citing FAA, 9 U.S.C. §§ 3, 4). Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law. *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."). Accordingly, when deciding whether to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted). In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

---

[3] The Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

The New Jersey Supreme Court has held that an arbitration agreement is enforceable when its terms affirmatively state—or unambiguously convey to a consumer in a way that he or she would understand—that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum." *Atalese v. U.S. Legal Services Grp., L.P.*, 219 N.J. 430, 315 (2014). The Third Circuit has similarly held that "[b]efore a party to a lawsuit can be ordered to arbitrate . . . there should be an express, unequivocal agreement to that effect." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

Under New Jersey law, "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Levy v. AT&T Servs., Inc.*, No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide unqualified acceptance, which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp.*, 852 F.3d at 265).

More generally, to prove the existence of a valid contract under New Jersey law, a party must show: 1) a "meeting of the minds"; 2) "offer and acceptance"; 3) consideration; and 4) certainty in the terms of the agreement. *Big M. Inc. v. Dryden Advisory Group*, No. 08-3567, 2009 WL 1905106, at *13 (D.N.J. June 30, 2009) (citing N.J. Jury Instr. Civ. 4.10 C); *see also Comprehensive Neurosurgical, P.C. v. Valley Hosp.*, 257 N.J. 33, 65 (2024) (noting that a contract requires mutual assent and consideration, and that the parties agree on all essential terms).

b. **Motion for Leave to Amend**

Whether to permit an amendment to a complaint is governed by Fed. R. Civ. P. 15(a), which provides that leave to amend should be readily granted where justice requires. "In the absence of undue delay, bad faith or dilatory motive on the part of the movant, leave to amend should be freely given." *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007). "Leave to amend may be denied, however, if amendment would be futile." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Id.*

## III. DISCUSSION

a. **The EFAA Does Not Apply to Plaintiff's Claims**

The parties dispute whether the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. §§ 401–02 applies to Plaintiff's claims. The Court finds it does not.

As declared by Congress, the EFAA amended the FAA to provide:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.[4]

9 U.S.C. § 402(a).

---

[4] Notably, if a lawsuit relates to a sexual assault or sexual harassment dispute, the EFAA renders unenforceable an arbitration agreement "with respect to" that entire "case." *McDermott v. Guaranteed Rate, Inc.*, No. A-0921-24, 2025 WL 3730563, at *12 (N.J. Super. Ct. App. Div. Dec. 26, 2025) (citing *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535 (S.D.N.Y. 2023) ("Th[e] text [of 9 U.S.C. § 402(a)] is clear, unambiguous, and decisive as to the issue here. It keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute.")).

The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The EFAA was enacted on March 3, 2022, and thus only applies to claims that accrued on or after that date. *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); *Johnson*, 657 F. Supp. 3d at 550.

To determine whether a plaintiff has "alleg[ed] conduct constituting a sexual harassment dispute" pursuant to 9 U.S.C. § 402(a), courts apply "the familiar Rule 12(b)(6) standard to evaluate whether a plaintiff has sufficiently plead a claim under the law allegedly violated. *Michael v. Bravo Brio Restaurants LLC*, No. 23-3691, 2024 WL 2923591, at *4 (D.N.J. June 10, 2024); *see Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240 (3d Cir.), *cert. denied,* 146 S. Ct. 193 (2025). There are two recognized theories of sexual harassment under Title VII: "quid pro quo harassment" and a "hostile work environment."[5] *Michael*, 2024 WL 2923591, at *5 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "To establish a hostile work environment claim under Title VII, a plaintiff must show: '(1) intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; [and] (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position.'" *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)). Similarly, to make out a hostile work environment claim under the NJLAD, a plaintiff must prove "the complained-of conduct (1) would not have occurred but for the employee's [protected status]; and it was (2)

---

[5] The Third Circuit has not yet determined whether a hostile work environment claim can be made under the ADEA. *See, e.g., Howell v. Millersville Univ. of Pa.*, 749 F. App'x 130, 135 (3d Cir. 2018); *Culler v. Sec'y of U.S. Veterans Affs.*, 507 F. App'x 246, 249 n.3 (3d Cir. 2012). Even if such a claim existed, it is not clear that it would constitute a "sexual harassment dispute" for purposes of 9 U.S.C. § 402(a). Thus, "[i]n analyzing the ADEA hostile work environment claim, the Court pulls from the caselaw developed in the context of Title VII hostile work environment claims. This is because 'Title VII and the [ADEA] are comparable in many contexts,' and the Third Circuit has relied on cases from one statute when analyzing the other." *Adams v. City of Newark*, 747 F. Supp. 3d 721, 732 (D.N.J. 2024) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 n.4 (3d Cir. 2006)).

severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Adams v. City of Newark*, 747 F. Supp. 3d 721, 732 (D.N.J. 2024) (quoting *Cutler v. Dorn*, 196 N.J. 419, 430 (2008)).

To prove a claim of quid pro quo sexual harassment under NJLAD, "[q]uid pro quo sexual harassment occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment" and "involves an implicit or explicit threat that if the employee does not accede to the sexual demands, he or she will lose his or her job, receive unfavorable performance reviews, be passed over for promotions, or suffer other adverse employment consequences." *Logan v. Millstone Manor LLC*, No. 20-14433, 2022 WL 1720172, at *7 (D.N.J. May 27, 2022) (quoting *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 601 (1993)); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281–82 (3d Cir. 2000) (holding to state a claim for quid pro quo sexual harassment, a plaintiff must allege that "his or her response to unwelcome advances was subsequently used as a basis for a decision about compensation, terms, conditions, or privileges or employment.") (cleaned up).

Here, neither Plaintiff's Complaint nor PAC allege that Plaintiff was subject to any form of discrimination because of her gender. (*See generally* Compl.; PAC.) With respect to NJLAD, Plaintiff has not alleged that, but for her age or gender, Defendant would not have engaged in its alleged favoritism toward other employees. *See id.*; *see also Adams*, 747 F. Supp. 3d at 732 (quoting *Cutler*, 196 N.J. at 430). Thus, Plaintiff has failed to state a claim for sexual harassment based on a hostile work environment. *See Michael*, 2024 WL 2923591, at *5. Nor does Plaintiff allege that she received any sexual demands. *See Farrell*, 206 F.3d at 281–82. Rather, Plaintiff alleges that Defendant favored younger employees who were allegedly engaged in relations with

other employees (which are not alleged to be unwelcome or non-consensual). (*See* Compl.; PAC.) Plaintiff cites no authority suggesting that these allegations give rise to a cause of action for quid pro quo sexual harassment under the ADEA, Title VII, or NJLAD.

Accordingly, the Court finds that the EFAA does not render the parties' Arbitration Agreement unenforceable because Plaintiff has not "alleg[ed] conduct constituting a sexual harassment dispute" pursuant to 9 U.S.C. § 402(a). Furthermore, the Court finds that leave to amend Plaintiff's Complaint to add a claim for quid pro quo and hostile work environment sexual harassment would be futile. Thus, Plaintiff's Motion for Leave to Amend (Dkt. No. 8) is denied.

    b. **The Arbitration Agreement**

The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration. *Id.* at 773-74 (cleaned up). However, the Rule 12(b)(6) standard is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Id.* at 774 (internal quotations and citations omitted). In that event, "a district court should employ the standard used in resolving summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure." *Id.* at 771 (cleaned up).

Defendant contends, without elaboration, that "[c]ourts in the Third Circuit traditionally treat a motion to compel arbitration as a motion to dismiss for failure to state a claim" pursuant to

9

Fed. R. Civ. P. 12(b)(6). (Def.'s Br. at 4, Dkt. No. 5-7.) Defendant does not analyze in its papers whether the Rule 56 standard should apply. Plaintiff argues that the Rule 56 standard should apply because Defendant's purported arbitration agreement is extraneous to the Complaint. (Pl.'s Opp. Br. at 20-21, Dkt. No. 8-1.) Thus, Plaintiff requests that the Court deny Defendant's motion at the pleading stage and permit limited discovery of the issue of arbitrability. (*Id.*)

Here, the Complaint does not reference, attach, or rely on the arbitration agreement that Defendant cites. (*See generally* Compl., Dkt. No. 1.) Moreover, Plaintiff has submitted a sworn affidavit stating she did not sign the arbitration agreement and did not intend to be bound by it. (Reynard Aff., ¶¶ 2-7.) Furthermore, Plaintiff's affidavit is corroborated by the agreement itself, which is indeed unsigned. (*See* Dkt. No. 5-4.) Thus, Plaintiff has come forth with more than a "naked assertion" that the agreement is unenforceable. *See Guidotti*, 716 F.3d at 776. In such a scenario, Defendant's motion to dismiss is not "the proper vehicle through which to analyze the validity and enforceability of the arbitration agreement" because "the question of arbitrability cannot be resolved without considering the employment contract, which is evidence extraneous to the pleadings, and thus it would be inappropriate to apply the Rule 12(b)(6) in deciding this motion." *See Lepore v. Selectquote Ins. Servs., Inc.*, No. 22-1753, 2022 WL 17093110, at *3 (D.N.J. Nov. 21, 2022), *aff'd*, No. 22-3390, 2023 WL 8469761 (3d Cir. Dec. 7, 2023).

As the Third Circuit has explained, a "motion to compel arbitration must be denied pending further development of the factual record" in such scenarios. *See id.* The Court finds that here, as in *Guidotti*, a "restricted inquiry into factual issues" will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity" of the arbitration agreement. *Guidotti*, 716 F.3d at 774; *see also Torres*, 2018 WL 5669175, at *2

10

(denying motion to compel arbitration where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and raised for the first time in the defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration without prejudice and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate).

Accordingly, the Court will deny Defendant's motion without prejudice and will order the parties to conduct limited discovery on the issue of arbitrability. Following limited discovery, Defendant may file a renewed motion to compel arbitration, which the Court will review under the Rule 56 standard. *See Lepore*, 2022 WL 17093110, at *3.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel Arbitration or Dismiss (Dkt. No. 5) is **DENIED without prejudice**. Plaintiff's Cross-Motion for Leave to Amend (Dkt. No. 8) is **DENIED**. An order consistent with this Opinion will be entered.

Dated: February 2, 2026

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE